*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MATA.

RYAN PHILLIPS, Personal Representative of the
ESTATE OF BAUDELIO AGUILAR MATA,

        Petitioner-Appellee,

v

LUSMARIA MIETALKA,

        Respondent-Appellant.

UNPUBLISHED
May 15, 2026
10:33 AM

No. 374989
Ingham Probate Court
LC No. 24-000255-DE

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Respondent, Lusmaria Mietalka,[1] appeals by right the probate court's order permitting petitioner to amend an existing purchase agreement between petitioner and Mata Farm, LLC, for the purchase of Baudelio Mata's (decedent's) real property. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case concerns the disposition of decedent's 128-acre farm. Decedent had 15 living children at the time of his death, including Mietalka, Baudelio Mata Jr. (Baudelio Jr.), Trenidad Mata (Trenidad), and Maria Cavazos. Decedent's will generally left his estate to his "surviving children in as equal portions as possible." Following decedent's death in February 2024, petitioner was appointed as personal representative of decedent's estate and began taking steps to sell the farm. The property was appraised at $630,000, and in August 2024 Baudelio Jr. and Trenidad offered to purchase decedent's property for $650,000. This offer was contingent on a satisfactory

---

[1] We note that, in the record and the parties' briefing, respondent's last name is often spelled "Mietelka." For purposes of this opinion, we use the spelling reflected in the caption of the instant appeal.

inspection of the property, and on Baudelio Jr. and Trenidad obtaining a mortgage. Petitioner accepted this offer on August 7, 2024, and the purchase agreement set a closing date of September 18, 2024. Shortly after that agreement was signed, Mietalka entered into an agreement with petitioner to purchase the property for $650,000 in cash. This new agreement was conditioned upon the failure of the August 7, 2024 purchase agreement, and stated as follows: "This agreement will only enter into an executory phase upon the termination of that agreement. Buyer herein understands the 08/07/2024 agreement may be amended or extended as conditions warrant."

After an inspection found significant issues with the property's on-site water-supply and waste-water systems, petitioner agreed with Baudelio Jr. and Trenidad to extend the closing date of their purchase agreement to October 18, 2024, and then to December 18, 2024. During that time, Ingham County Health Department's sanitarian also inspected the water-supply and waste-water systems. This inspection likewise found several issues and resulted in the issuance of a nonconformance letter, which indicated that petitioner could not transfer the property until he either completed corrective actions or established an escrow account with 1.5 times the amount estimated to be necessary for making the requisite repairs. Petitioner did not receive the final estimate to finalize an escrow agreement until January 22, 2025.

In the meantime, Baudelio Jr. and Trenidad joined four of their siblings, including Cavazos, to form Mata Farm, LLC. On December 20, 2024, at the request of Baudelio Jr. and Trenidad, petitioner agreed to amend the purchase agreement to make Mata Farm the buyer and delay closing until January 31, 2025. As the new closing date approached, however, petitioner learned that Mata Farm was unable to obtain the necessary financing. Mata Farm asked petitioner to amend the agreement again, this time to add Cavazos as an individual purchasing party so that she and Mata Farm could purchase the property with Cavazos's funds and obviate the need for further financing. On the same day as this latest request, Mietalka offered to purchase the property for $650,000 in cash, with no contingencies or inspections but with the requirement that the estate pay her realtor's $6,000 commission. Petitioner initially rejected Mata Farm's request to further amend the August 7, 2024 purchase agreement, and then filed a petition for instruction in the probate court regarding the request and Mietalka's objection to it in light of her pending offer. Mata Farm and Mietalka each filed responses to the petition in support of their respective offers and positions.

At the hearing on the petition, the probate court heard argument from the parties' attorneys and also received comments from various other, unrepresented members of the decedent's family regarding their views of the dispute. As is particularly relevant here, Mietalka challenged the latest proposed amendment to the August 7, 2024 purchase agreement, arguing that the initial offer by Baudelio Jr. and Trenidad was no longer valid in light of the significant change in parties. Mietalka also asserted that her offer to purchase the property in cash with no contingencies was a superior offer. The probate court disagreed with Mietalka's position. The court noted that Mata Farm included the original proposed purchasers and four of decedent's children, and its offer provided "an opportunity to continue this property . . . to the benefit of a large number of the siblings that are left behind." The court observed that the delays in Mata Farm's purchase of the property were reasonable and that its offer, unlike Mietalka's, did not require the estate to pay any commission. The court concluded that Mata Farm's acquisition of the property would provide the most benefit to decedent's family members, consistent with the decedent's intent, and that Mata Farm and Cavazos should be given 30 days to purchase the property from the estate. Accordingly, the court entered an order permitting petitioner to amend the purchase agreement and add Cavazos as an

individual party, with the condition that the closing date be no later than 30 days from the date of the order. The court also instructed petitioner to accept Mietalka's offer if Mata Farm and Cavazos failed to close within 30 days.[2]

This appeal followed.

## II. STANDARDS OF REVIEW

This Court generally reviews a probate court's decisions "for an abuse of discretion," which "occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *In re Estate of Huntington*, 339 Mich App 8, 17; 981 NW2d 72 (2021) (quotation marks and citation omitted). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation marks and citation omitted). That said, "[a]n error of law necessarily constitutes an abuse of discretion." *Huntington*, 339 Mich App at 17 (quotation marks and citation omitted). "This Court reviews the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citations omitted).

## III. ANALYSIS

On appeal, Mietalka argues that the probate court abused its discretion by directing petitioner to amend the purchase agreement's buyers and closing date in service of an ever-changing and conditional offer, rather than to accept her superior unconditional cash offer. We disagree.

A personal representative is a fiduciary, MCL 700.1104(e), who "stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary," MCL 700.1212(1). "A personal representative is charged with the fiduciary responsibility to see to the estate's best interests, for the ultimate advantage of those beneficially interested in the estate." *In re Merry Estate*, 174 Mich App 627, 633; 436 NW2d 421 (1989). Further, a personal representative "is under a duty to settle and distribute the decedent's estate in accordance with the terms of a probated and effective will and this act, and as expeditiously and efficiently as is consistent with the best interests of the estate." MCL 700.3703(1). A personal representative "shall . . . take all steps reasonably necessary for the management, protection, and preservation of, the estate in the personal representative's possession," MCL 700.3709, and "shall proceed expeditiously with the settlement and distribution of a decedent's estate," MCL 700.3704. In general, a personal representative shall proceed with such settlement and distribution "without adjudication, order, or direction of the court," but "the

---

[2] Mietalka thereafter filed with the probate court a notice of lis pendens and a motion for stay of proceedings pending appeal. Mata Farm petitioned to set aside the lis pendens and, following a hearing, the probate court granted Mata Farm's petition as well as Mietalka's motion for stay.

personal representative may invoke the court's jurisdiction in a proceeding authorized by this act to resolve a question concerning the estate or its administration." *Id.*

Here, the personal representative petitioned for instruction from the probate court regarding the competing offers that had been presented for decedent's farm and the related request to amend one such offer's purchase agreement. We see no abuse of discretion in the probate court's resolution of that petition.

Mietalka first asserts that the probate court erred by treating the purchase agreement between petitioner and Mata Farm as valid and enforceable, on the ground that the changes made to the agreement altered it so significantly that it no longer bore a reasonable resemblance to the initial agreement. Mietalka specifically takes issue with the changes made regarding the proposed buyers and the repeated changes to the closing date. Mietalka, however, cites no authority to meaningfully support the notion that these changes rendered the agreement invalid or unenforceable, or that the court committed legal error in allowing them. Nor does our review of the record reveal any error in the court's assessment of the changes as reasonable. Baudelio Jr. and Trenidad initially offered to purchase decedent's property for $650,000, then joined with several of their siblings to create Mata Farm, LLC. The first change in buyer only substituted Mata Farm, which included Baudelio Jr. and Trenidad, as the proposed buyer, while the second change simply added Cavazos, a member of Mata Farm, as an individual buyer, in order to facilitate financing. It is apparent that these changes simply allowed Baudelio Jr. and Trenidad to purchase the property through an LLC they shared with their siblings, and to obtain the requisite financing.

Similarly, Mietalka has not shown how the delays Mata Farm experienced in closing on the property were unreasonable, given the reported defects with the property. The initial closing date set forth in the August 7, 2024 purchase agreement was September 18, 2024, but this date was ultimately amended to January 31, 2025, after the Ingham County Health Department's inspection identified issues with the property's water and sewer systems. As a result, the Health Department required petitioner to take corrective action, or create an escrow account, before the property could be transferred. Petitioner did not receive necessary estimates to finalize an escrow agreement until January 22, 2025, shortly before petitioner filed the petition for instruction. There is nothing in the record to suggest that these delays were the result of any gratuitous intentional delay on the part of Mata Farm, for instance, or were otherwise unreasonable. And finally, as noted, Mietalka expressly recognized and agreed in her own purchase agreement that the August 7, 2024 purchase agreement could be "amended or extended as conditions warranted."

The record also does not support Mietalka's assertion that her offer to purchase the property was more beneficial to decedent's estate because she could close in short order and pay cash with no contingencies. Mietalka correctly asserts that the closing process for Mata Farm was delayed, but she fails to acknowledge the cause of this delay. As discussed, the delayed closing date for the August 7, 2024 agreement resulted from property defects that prevented its orderly transfer. The initial closing date was therefore extended to allow the parties to obtain estimates for the necessary repairs and establish an attendant escrow account, and petitioner did not receive the needed estimates until late January 2025. There is no indication that Mietalka could have helped petitioner satisfy Ingham County's conditions for transfer any faster. Mietalka emphasizes her ability to pay cash for the property, but that does not itself give her an advantage over Mata Farm. Unlike Mietalka's offer, the offer from Baudelio Jr. and Trenidad, and later from Mata Farm, was

contingent on the buyers obtaining financing. But the record reflects that Mata Farm was later able to obtain financing through Cavazos and was thus also able to pay $650,000 in cash once Cavazos was added as an individual buyer. Mietalka additionally emphasizes that her offer included no contingencies and waived any inspections that would typically be required. Mata Farm's offer was conditioned on successful inspections, but petitioner and Mata Farm had already taken the steps necessary to address the property's required repairs when the petition for instruction was filed.

Furthermore, as the probate court recognized, the Mata Farm offer did not require the estate to pay a realtor's commission, whereas Mietalka's offer required the estate to pay $6,000 for such a commission, reducing the overall amount the estate would receive from a sale to Mietalka. The probate court also considered the makeup of Mata Farm and the ability of decedent's family members to access the property. Mata Farm was made up of six of decedent's 15 living children, and the probate court heard from both decedent's daughter and granddaughter that they believed Mata Farm would allow a large part of decedent's family to access the property.

Given that both parties were ultimately able to purchase the property for $650,000 in cash, that petitioner and Mata Farm addressed the necessary repairs to the property, that Mietalka's offer required payment of the realtor's commission by the estate, and that several of decedent's children were involved with Mata Farm, we see no error in the trial court's rejection of Mietalka's position that her offer was superior or more beneficial to the estate.

In sum, Mietalka has failed to show any abuse of discretion in the probate court's decision to allow petitioner to amend the purchase agreement to add Cavazos as an individual party and to afford Mata Farm and Cavazos a 30-day window to purchase the property. Both Mietalka and Mata Farm made reasonable offers, which were for more than the appraised value of the property and were from members of decedent's family. In light of the large number of decedent's living children that would have access to the property and the overall amount the estate would receive from the purchase, the probate court's decision in favor of Mata Farm did not fall outside the range of principled outcomes; that does not change simply because an outcome in favor of Mietalka might also have been reasonable. See *Maldonado*, 476 Mich at 388. Mietalka has failed to show any basis for this Court to disrupt the probate court's decision.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani